**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**
Aug 08 2014, 9:05 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID BECSEY**
Zeigler Cohen & Koch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| R.C., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1401-JV-024 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT, JUVENILE DIVISION
The Honorable Marilyn A. Moores, Judge
Cause No. 49D09-1307-JD-1920

**August 8, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

R.C. was adjudicated a delinquent child for committing an act that would constitute Resisting Law Enforcement[1] as a class A misdemeanor if committed by an adult. R.C. presents one issue for our review: Did the State present sufficient evidence to support the true finding?

We affirm.

The facts favorable to the adjudication follow. R.C. was born on August 29, 1996. On July 5, 2013, just after midnight, R.C. was walking northbound on Meridian Street. Officer Christopher Faulds and other officers with the Indianapolis Metropolitan Police Department encountered R.C. near the intersection of Meridian and New York Streets. R.C. was with a group of about nine other individuals, some of whom appeared to be juveniles. Officer Faulds's attention was drawn to the group when, from a block away, he heard loud voices and some noise coming from the group. Officer Faulds specifically identified R.C. as one of the individuals being loud. Officer Faulds also noted that the group was in the vicinity of "several apartment complexes." *Transcript* at 9.

Officer Faulds and the other officers approached the group and asked them "to stop the noise." *Id.* The group did not respond to the request, and R.C. "just started to walk away, ignoring and just kept going on." *Id.* at 10. Officer Faulds then directed the entire group to "stop." *Id.* After a second order to stop, some of the individuals in the group complied. R.C., however, continued walking. Officer Faulds attempted to stop R.C. by reaching out and taking ahold of R.C.'s right upper arm. R.C. "jerked his arm

---

[1] Ind. Code Ann. § 35-44.1-3-1(a) (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly).

out of [Officer Faulds's] hand and pushed [Officer Faulds] back and kept then kept [sic] walking." *Id*. at 11. The contact was "hard enough" that Officer Faulds nearly lost his balance. *Id*.

The other officers then attempted to place R.C. in handcuffs, at which point R.C. started to kick and "flail his arms about." *Id*. The officers had to "take [R.C.] to the ground to get his limbs under control." *Id*. Once on the ground, R.C. continued to kick at the officers and also began spitting at them. The officers were eventually able to place R.C. in handcuffs, at which point R.C. sat up and stopped struggling.

On July 8, 2013, the State filed a delinquency petition alleging that R.C. was a delinquent child for committing an act that would constitute class A misdemeanor resisting law enforcement if committed by an adult. On November 13, 2014, the juvenile court held a fact-finding hearing and adjudicated R.C. a delinquent child. A disposition hearing was held on December 23, 2013. The juvenile court placed R.C. on probation with suspended commitment to the Department of Correction.

On appeal, R.C. argues that the evidence is insufficient to support his adjudication. Our standard of review in this regard is well settled.

> When the State seeks to have a juvenile adjudicated to be a delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of that crime beyond a reasonable doubt. Upon review, we apply the same sufficiency standard used in criminal cases. When reviewing the sufficiency of evidence, we do not reweigh the evidence or judge the credibility of witnesses. Instead we look to the evidence of probative value and the reasonable inferences that support the determination.

3

*A.E.B. v. State,* 756 N.E.2d 536, 540 (Ind. Ct. App. 2001) (citations omitted). Further, the uncorroborated testimony of a single witness can provide sufficient evidence. *See McCarthy v. State,* 749 N.E.2d 528 (Ind. 2001).

Here, the delinquency petition provided that R.C. did "knowingly or intentionally forcibly resist, obstruct or interfere with a law enforcement officer, that is: Police officer Christopher Faulds, Indianapolis Metropolitan Police Department, who was lawfully engaged in the execution of his duties as an officer."[2] *Appellant's Appendix* at 18. One "forcibly resists" law enforcement when "strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of duties." *Stansberry v. State*, 954 N.E.2d 507 (Ind. Ct. App. 2011) (quoting *Spangler v. State*, 607 N.E.2d 720, 723 (Ind. Ct. App. 1993)). The force necessary to sustain a conviction, however, need not rise to the level of mayhem, and our Supreme Court has acknowledged that a "modest level of resistance" may suffice. *See Graham v. State,* 903 N.E.2d 963, 965 (Ind. 2009) (citing *Johnson v. State,* 833 N.E.2d 516, 517 (Ind. Ct. App. 2005)).

R.C. contends that the evidence is insufficient to support his adjudication because the officers were not legally engaged in the performance of their duties when, without explanation or warning, they grabbed him from behind, took him to the ground, and placed him in handcuffs. R.C. maintains that under the circumstances, his response to the conduct of the officers was reasonable.

---

[2] *See* I.C. § 35-44.1-3-1(a)(1) ("A person who knowingly or intentionally . . . forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties . . . commits resisting law enforcement, a Class A misdemeanor.").

4

We first consider whether Officer Faulds and the other IMPD officers were "lawfully engaged" in the execution of their duties as police officers. It is well settled that "police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion that criminal activity 'may be afoot.'" *State v. Calmes*, 894 N.E.2d 199, 202 (Ind. Ct. App. 2008) (citation omitted).

Here, the officers observed a group of individuals, some of whom appeared to be teenagers, talking loudly and making noise as they walked along Meridian Street in downtown Indianapolis shortly after midnight on Friday, July 5, 2013. The officers had reasonable suspicion to believe that R.C. and others within the group were out past curfew in violation of Ind. Code Ann. § 31-37-3-2 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly). That statute provides that it is a curfew violation for a child between fifteen and seventeen years of age to be in a public place after 11 p.m. on Sunday, Monday, Tuesday, Wednesday, or Thursday or before 5 a.m. on Monday, Tuesday, Wednesday, Thursday, or Friday, so long as the child does not have a legal defense. Being before 5 a.m. on a Friday morning, the officers therefore saw R.C. committing a delinquent act and had authority to stop him. *See* I.C. § 31-37-3-2 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly) (stating that a child who commits a curfew violation commits a delinquent act).

5

Officer Faulds also testified that the group caught his and the other officers' attention by being loud and talking with raised voices in an area of downtown Indianapolis where there were apartments. The officers therefore had reasonable suspicion to believe that R.C. was committing an act that would be class B misdemeanor disorderly conduct if committed by an adult. To be sure, the officers observed R.C. making "unreasonable noise and continu[ing] to do so after being asked to stop." *See* Ind. Code Ann. § 35-45-1-3 (West, Westlaw current through 2012 Second Regular Session).

The officers were lawfully engaged in their execution of their duties as police officers when they were patrolling streets in downtown Indianapolis and came upon a group of individuals who the officers believed to be in violation of curfew and who were being unreasonably loud for the location and time. Either of these offenses provided the officers with authority to stop R.C. and inquire into their suspicions about his activity. R.C.'s argument that he was grabbed from behind without explanation or warning, taken to the ground, and placed him in handcuffs is merely an invitation for this could to reweigh the evidence and adopt his version of events. This we will not do.

R.C. also argues that his conduct in response to the officers' actions was reasonable under the circumstances. While the encounter with R.C. was not initiated in order to effect an arrest, we find the following helpful. The general rule in Indiana is that "a private citizen may not use force in resisting a peaceful arrest by an individual who he knows, or has reason to know, is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful." *Shoultz v. State*, 735 N.E.2d 818,

6

823 (Ind. Ct. App. 818, 823 (Ind. Ct. App. 2000) (quoting *Casselman v. State,* 472 N.E.2d 1310, 1315 (Ind. Ct. App. 1985)), *trans. denied.* When, however, an officer uses unconstitutionally excessive force in effecting an arrest, that officer is no longer lawfully engaged in the execution of his or her duty. *Shoultz v. State,* 735 N.E.2d 818.

On this point, we note that even after being ordered to stop a second time, R.C. continued walking. Officer Faulds then reached out and touched R.C. on his shoulder, at which point, R.C. pushed Officer Faulds with enough force that Officer Faulds nearly lost his balance. Nothing about Officer Faulds's conduct warranted being pushed by R.C. in such manner. The other officers who witnessed the hostile reaction by R.C. attempted to take control of the situation, and R.C. immediately responded by kicking and spitting at the officers and flailing his arms.

Contrary to R.C.'s claim, the circumstances of this case are not akin to the situation presented in *Shoultz*, wherein the defendant was only verbally aggressive with the police officer and did not physically and with force interfere with the officer's investigation. Further, in *Shoultz*, the officer had "no basis" for concluding that Shoultz had committed any crime before using considerable force against him. *Id.* at 824. Here, Officer Faulds witnessed R.C. commit two delinquent acts. When approached, R.C. physically pushed Officer Faulds such that he nearly lost his balance.

The situation did not escalate and the officers did not employ force on R.C. until after R.C. acted in a forceful manner. Officer Faulds approached the group and asked them to quiet down. The group did not comply, so Officer Faulds ordered the group to stop. R.C. ignored this order as well, and when Officer Faulds attempted to stop him,

7

R.C. responded by forcefully pushing Officer Faulds and then he continued to ignore the order to stop by walking away. R.C.'s behavior was not reasonable under the circumstances.

R.C. asserts that the force used against him was excessive.

> Claims that law enforcement officers have used excessive force in the course of an arrest of a free citizen are analyzed under the Fourth Amendment to the United States Constitution and its "reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). Because the Fourth Amendment test of reasonableness is not capable of precise definition or mechanical application, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. 490 U.S. at 396, 109 S.Ct. at 1872. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20-20 vision of hindsight. *Id.* However, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. 490 U.S. at 396–97, 109 S.Ct. at 1872.

*Shoultz v. State*, 735 N.E.2d at 823-24.

The underlying offenses – a curfew violation and disorderly conduct – were relatively innocuous. Nevertheless, it was after midnight when the police officers approached a group of approximately ten individuals who were being loud and refusing to comply with orders to quiet down and ultimately, to stop. The reaction of R.C. was to immediately use physical force against the officer by shoving him. The officers, being outnumbered, reasonably attempted to take control of R.C. and the situation. R.C. only escalated the situation by kicking, flailing his arms, and spitting on the officers. There is

8

nothing in the facts as presented by the State that indicates the officers used excessive force under the circumstances.

In sum, the evidence presented by the State was sufficient to prove beyond a reasonable doubt that R.C. forcibly resisted, obstructed, or interfered with a law enforcement officer while the officer was lawfully engaged in the execution of the officer's duties.

Judgment affirmed.

MATHIAS, J., and PYLE, J., concur.